## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **VILLAGE BANK & TRUST, N.A.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | Civil Action No. 3:20-CV-3653-S-BH |
| | § | |
| **CLEAN SMILES DENTAL, PLLC,** | § | |
| **BENBROOK FAMILY DENTISTRY,** | § | |
| **PPLC, and HAROLD KAMARA,** | § | |
| | § | |
| **Defendants.** | § | Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By electronic order of reference dated February 9, 2021 (doc. 9), before the Court is *Plaintiff's Motion for Default Judgment*, filed February 8, 2021 (doc. 8). Based on the relevant filings and applicable law, the motion for default judgment should be **GRANTED**.

### I. BACKGROUND

On December 16, 2020, Village Bank & Trust, N.A. (Plaintiff) sued Clean Smiles Dental, PPLC (Clean Smiles) for breach of contract, and Benbrook Family Dentistry, PLLC (Benbrook) and Harold Kamara (Kamara) (Defendants), for breach of guaranty. (doc. 1 at 7-10.)[1]

On December 14, 2014, Plaintiff and Clean Smiles entered into a Business Loan Agreement (Loan Agreement) for a commercial loan in the original principal amount of $1,125,000 (the Loan). (docs. 1 at 3;1-2.) Clean Smiles contemporaneously executed a Promissory Note (Note) promising to repay the Loan at an interest rate of 5.500%. (docs. 1 at 4; 1-3.) Under the terms of the Loan Agreement and the Note (collectively the Loan Documents), Clean Smiles agreed to make monthly principal and interest payments. It would be in default if, among other things, it failed to timely pay

---

[1]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

the full amount of each required monthly payment, and if "[a] material adverse change occurs in [its] financial condition, or [Plaintiff] believes the prospect of payment or performance of this Note is impaired." (doc. 1-3 at 1-2.)

On the same day, Clean Smiles executed a Commercial Security Agreement (Clean Smiles Security Agreement) that granted Plaintiff a security interest in certain property it owned to secure repayment of the Loan. (doc. 1-4)  Benbrook also executed a Commercial Security Agreement (Benbrook Security Agreement) that granted Plaintiff a security interest in certain property it owned to secure repayment of the Loan.  (doc. 1-5.)  Similarly, Kamara executed a Commercial Pledge Agreement (Kamara Security Agreement) that granted Plaintiff a security interest in certain property he owned to secure repayment of the Loan. (doc. 1-6.)  Plaintiff perfected its security interests in the specific property listed in the Clean Smiles Security Agreement and Benbrook Security Agreement by filing financing statements on December 22, 2014. (docs. 1-7, 1-8.)

In connection with the Loan, Benbrook and Kamara also executed separate guaranty agreements, which provided in relevant part that each guarantor "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents." (docs. 1-13 at 1; 1-14 at 1.)

Beginning July 19, 2020, Clean Smiles failed to submit its monthly payments as required under the Loan Documents, and Plaintiff's attorneys provided Defendants a Notice of Default and Demand for Payment (Notice of Default) on September 4, 2020. (doc. 1-9.) It explained that Clean Smiles was in default for failure to make required payments, and that the maturity date of the Loan would be accelerated if the default was not timely cured. (*Id.* at 2.)  Plaintiff later learned of pending

litigation involving Defendants, which negatively impacted their ability to timely perform their obligations under the Loan Documents. (doc. 1 at 5.)  On September 9, 2020, Plaintiff's attorneys sent Defendants a second Notice of Default and Demand for Payment (Second Notice of Default), informing them that the litigation triggered additional events of default under the Loan Documents. (doc. 1-10.) On September 29, 2020, Plaintiff's attorneys sent Defendants a Notice of Acceleration of Loan, explaining that the maturity date of the Note had been accelerated because of their failure to cure the default. (doc. 1-11.) Through February 2, 2021, the total amount due on the Loan was $638,191.19, with interest and other charges continuing to accrue while in default. (doc. 8-4 at 5.)

On December 16, 2020, the same day this action was filed, summonses were issued for Defendants. (doc. 3.)  Plaintiff properly served Defendants on December 19, 2020. (doc. 4.) After Defendants failed to answer or respond to the complaint, Plaintiff sought entry of default (doc. 6), which the Clerk of Court entered on January 21, 2021 (doc. 7).

Plaintiff now seeks a default judgment for actual damages, pre- and post-judgment interest, court costs, attorneys' fees, and judicial foreclosure of the secured property. (doc. 1 at 10-11.)

## II.  MOTION FOR DEFAULT JUDGMENT

Plaintiff moves for default judgment under Rule 55 of the Federal Rules of Civil Procedure. (doc. 8.)

Rule 55 sets forth the conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment.  There is a three-step process for securing a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a).  Next, an entry of default must be entered when the default is established "by affidavit

3

or otherwise." *See id.*; *New York Life Ins. Co.*, 84 F.3d at 141. Third, a party may apply to the clerk or the court for a default judgment after entry of default. Fed. R. Civ. P. 55(b); *New York Life Ins. Co.*, 84 F.3d at 141. Here, because Defendants have failed to plead or otherwise defend, and Plaintiff has obtained an entry of default on them, the first two requisites for a default judgment have been met. (docs. 4, 6, 7.) Remaining for determination is whether a default judgment is warranted.

"'Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). Moreover, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Id.* (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam)). "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Only well-pleaded facts, not conclusions of law, are presumed to be true. *Id.* Default judgment "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger–Silas Mason Co., Inc. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984) (per curiam).

The decision to enter a judgment by default is discretionary. *Stelax Indus., Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *11 (N.D. Tex. Mar. 25, 2004). "Any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). In determining whether the entry of a default judgment is appropriate, courts look to

4

whether default judgment is procedurally warranted, whether the plaintiff's complaint provides a sufficient factual basis for the plaintiff's claim for relief, and whether the requested relief is appropriate. *See J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (citing *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

## A.    <u>Procedurally Warranted</u>

Courts consider numerous factors in deciding whether to grant a motion for default judgment. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2685 (3d ed. 1998). The applicable factors include: (1) the amount of money involved; (2) whether there are material issues of fact or issues of substantial public importance at stake; (3) whether the default is technical in nature; (4) the extent of prejudice to the plaintiff due to the delay; (5) whether the grounds for default are clearly established; (6) the harsh effect of a default judgment; (7) whether the default resulted from a good faith mistake or excusable neglect on the defendant's part; (8) whether the plaintiff's actions contributed to delay; and (9) whether the court would be obligated to set aside the default on motion by the defendant. *Id.*; *see Lindsey*, 161 F.3d at 893 (citing 10A WRIGHT, MILLER, KANE & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2685); *Stelax Indus., Ltd.*, 2004 WL 733844, at *11 (same).

Plaintiff seeks the total aggregate amount of $638,191.19 in liquidated monetary damages, which consists of: (i) the unpaid principal balance of $598,751.34; (ii) unpaid interest accrued in the amount of $20,909.13; (iii) late charges in the amount of $4,157.56; and (iv) reasonable attorneys' fees and costs related to the breach of contract claims in the amount of $14,373.16. (doc. 8 at 2-3.) It also seeks interest accrual in the amount of $91.48 per day between February 2, 2021 and the date

of judgment, post-judgment interest at a rate of 9%, and judicial foreclosure of the property pledged as security under the security agreements. (*Id.*) It provides copies of the Loan Agreement, Note, the security agreements, the guaranty agreements, First Notice of Default, Second Notice of Default, and Notice of Acceleration, and the declaration of Plaintiff's executive vice president (Sworn Declaration), which verifies the allegations in the complaint. (*See* doc. 8-4.)  It also includes the declaration from its counsel in this lawsuit stating that the $13,041.50 in attorneys' fees and the $1,331.66 in costs incurred were reasonable and necessary, and billing invoices showing the work performed, attorney hourly rates, and the amount of attorneys' fees. (*See* doc. 8-5.)

Under the first factor, although the total amount requested could be considered substantial, that "is not dispositive." *US Green Bldg. Council, Inc. v. Wardell*, No. 3:14-CV-01541-M-BH, 2016 WL 3752964, at *3 (N.D. Tex. June 17, 2016), *adopted by* 2016 WL 3766362 (N.D. Tex. July 11, 2016).  Regarding the second factor, there are no material issues of fact in dispute, since Defendants have failed to file any responsive pleadings in this case.[2]  *See Nishimatsu Constr. Co.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact").  Although the default appears to be technical in nature (third factor), Plaintiff is prejudiced and harmed by the continued delay in this case, which is the fourth factor. *See United States v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (holding that a plaintiff's interests were prejudiced because the defendant's failure to respond brought the adversary process to a halt).  Under the fifth and sixth factors, the grounds for default are clearly established, and a default judgment is not unusually harsh under these facts given that Defendants have received ample notice of this action and sufficient time to respond. *See Lindsey*, 161 F.3d at 893; *see also J*

---

[2]Plaintiff includes a copy of a military service declaration and a status report from the Department of Defense Manpower Data Center showing that Kamara is not in the military. (*See* doc. 8-3.)

6

*& J Sports Prods.*, 126 F. Supp. 3d at 814 ("Defendants' failure to respond to Plaintiff's Complaint or otherwise appear in this case for the past ten months 'mitigat[es] the harshness of a default judgment.'") (citations omitted). The seventh, eighth, and ninth factors similarly favor default judgment because Defendants have not offered any evidence that their failure to answer was the product of a good faith mistake or excuse, Plaintiff has not contributed to the delay in this case, and there does not appear to be any basis upon which the Court would be obligated to set aside the default. *See Lindsey*, 161 F.3d at 893

Because Defendants were properly served in this action and failed to answer or otherwise defend themselves, the grounds for default judgment are clearly established. (*See* docs. 4, 7.) Accordingly, default judgment is procedurally warranted.

## B.    Sufficient Factual Basis

Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016). In determining whether there is a sufficient basis in the pleadings for judgment, the Fifth Circuit "draw[s] meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Id.* at 498.

Recognizing that "a defendant must invoke Rule 12 in order to avail itself of that Rule's protections, [while] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context." *Id.* at 498 n.3.

### 1.    *Breach of Contract Against Clean Smiles*

Plaintiff asserts a breach of contract claim against Clean Smiles. (*See* docs. 1 at 7-8; 8 at 2.)

The essential elements of a breach of contract claim in Texas[3] are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005, pet. denied)).[4] "A breach occurs when a party fails or refuses to do something he has promised to do." *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

[3]"It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthodpedic Assoc., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). "Under Texas law, the substantive law of the state chosen by the parties to govern their contractual rights and duties will be applied unless the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." *United States ex rel. Varco Pruden Bldgs. v. Reid & Gary Strickland Co.*, 161 F.3d 915, 919 (5th Cir. 1998) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990)). Here, each loan document has a separate choice-of-law provision, stating that it is governed under either Illinois or Texas law. (*See* doc. 8-4 at 12, 16, 21, 27, 33, 54, 58.) Plaintiff's motion does not cite any law in support of its breach of contract and breach of guaranty claims, but it requests attorneys' fees under Texas law. "Absent notice by the parties that another state's law should apply and that the other state's law differs from Texas law, the court will apply Texas law to the dispute and presume the sister state's laws are the same." *Thermo Fisher Sci. Inc. v. Ducharme*, No. CV M-08-9, 2008 WL 11399557, at *2 (S.D. Tex. Sept. 30, 2008); *see Johnson v. Structured Asset Services, LLC*, 148 S.W.3d 711, 720 (Tex. App.—Dallas 2004, no pet.) (concluding that the trial court did not err in applying Texas law when the parties failed to brief the choice-of-law issue, even though the contract at issue had a choice-of-law clause selecting Pennsylvania law). As discussed below, the relevant substantive law appears to be the same in Illinois and Texas. *See, e.g., Can Cap. Asset Servicing, Inc. v. Azket E-Intel. LLC*, No. 3:20-CV-3212-B, 2021 WL 2474159, at *3 n.3 (N.D. Tex. June 17, 2021) (analyzing claims under Utah and Texas law on motion for default judgement where the agreement had a Utah choice-of-law clause and plaintiff relied upon Texas law in its pleadings).

[4]Texas and Illinois have the same elements for a breach of contract claim. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quotation and citation omitted) (explaining that a plaintiff claiming breach of contract under Illinois law must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) the resultant damages").

Here, Plaintiff attached copies of the Loan Agreement, Note, and Clean Smiles Security Agreement to its complaint and motion for default judgment. (*See* docs. 1-1–1-4; 9-4 at 7-22.) It alleges that the Loan Agreement, Note, and Clean Smiles Security Agreement "are valid and enforceable contracts between Plaintiff and Clean Smiles," that it fully performed its obligations under the contracts, and that "Clean Smiles breached the Note and Loan Agreement by failing to make payments due under the Note and Loan Agreement and failing to cure the specific defaults noticed in the Notice of Default and Second Notice of Default." (doc. 1 at 7.) Plaintiff also provides the Sworn Declaration, which states that it advanced the full amount of the Loan to Clean Smiles. (doc. 8-4 at 4.) The Sworn Declaration states that Clean Smiles breached the Note and Loan Agreement by failing to pay the monthly payments of $12,253.92 that is due and owing to Plaintiff since July 19, 2020, and also by failing to pay the full amount that is due under the Note and Loan Agreement as required upon default. (*Id.* at 3-4.) It also states that as of February 2, 2021, "the amount due under the terms of the Loan Agreement and Note was $638,191.19." (*Id.* at 5.) Plaintiff has established that Clean Smiles breached the Loan Agreement and Note, and it is entitled to default judgment against Clean Smiles on its breach of contract claim.

### 2.     *Breach of Guaranty Against Benbrook and Kamara*

Plaintiff asserts breach of guaranty claims against Benbrook and Kamara. (*See* docs. 1 at 8-10; 8 at 1.)

Under Texas law, to recover on a claim for breach of a guaranty agreement, the holder of the guaranty must establish "proof of (1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor." *Haggard*

*v. Bank of Ozarks Inc.*, 668 F.3d 196, 199 (5th Cir. 2012) (quoting *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex.App.–Dallas, 1994, no writ)).[5]

Here, Plaintiff alleges that Benbrook and Kamara executed separate guaranty agreements, in which they "absolutely and unconditionally guaranteed the prompt and full payment and performance of all liabilities, obligations or undertakings owed by Clean Smiles to Plaintiff under the Note and Loan Agreement." (doc. 1 at 6-7.)  It also presents a copy of the Benbrook Guaranty and Kamara Guaranty. (docs. 1-12, 1-13.)  Plaintiff alleges that Benbrook and Kamara received notice after Clean Smile breached the Note and Loan Agreement, but each "failed to make any payments in satisfaction of the loan obligations Clean Smiles incurred under the Loan Agreement." (doc. 1 at 6-7.)  Because Clean Smiles failed to perform the obligations owed Plaintiff under the Note and Loan Agreement, each breached the terms of its guaranty agreement. *See Haggard*, 668 F.3d at 199.  Plaintiff has established that Benbrook and Kamara have breached their guaranty agreements and are both liable as guarantors, and that it is entitled to default judgment on its breach of guaranty claims against them.

## C.    Appropriateness of Relief

Plaintiff's motion for default judgment seeks to recover $638,191.19 in liquidated monetary damages, which includes pre-judgment interest and its attorneys' fees and costs. (doc. 8 at 2-3.)  It also seeks post-judgment interest and judicial foreclosure. (*Id.*)

In awarding relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).  The relief requested in a plaintiff's

---

[5]In Illinois, the elements for a breach of guaranty claim are sufficiently similar. *See Fifth Third Bank (Chicago) v. Stocks*, 720 F. Supp.2d 1008, 1011 (N.D.Ill. 2010) ("To establish a prima facie case for enforcement of a guaranty under Illinois law, the plaintiff must 'enter[ ] proof of the original indebtedness, the debtor's default, and the guarantee.'") (citation omitted).

complaint limits the relief available in a default judgment. *See Sapp v. Renfroe*, 511 F.2d 172, 176

n. 3 (5th Cir. 1975).  Damages on a default judgment are normally not awarded without a hearing

or a demonstration by detailed affidavits; a hearing is unnecessary, however, if the amount of

damages can be determined with a mathematical calculation by reference to the pleadings and

supporting documents. *See James*, 6 F.3d at 310.  The plaintiff has the burden to provide an

evidentiary basis for the damages it seeks.  *Broadcast Music, Inc. v. Bostock Billiards & Bar Assoc.*,

No. 3:12-CV-413-B, 2013 WL 12126268, at *3 (N.D. Tex. Jan. 18, 2013).  Because the requested

relief does not differ in kind from, or exceed in amount, of what is demanded in the pleadings,

remaining for determination is whether the relief requested is appropriate based on governing law.

*Chevron Intellectual Property, LLC v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *3 (N.D.

Tex. Aug. 24, 2009).

### 1.      *Monetary Damages and Pre-Judgment Interest*

Plaintiff's complaint seeks to recover the full amount due under the Note and Loan

Agreement from Defendants. Its motion seeks to recover $623,818.03[6] in liquidated damages, which

reflects the amount due and owing under the Note and Loan Agreement. (doc. 8 at 2.) It attaches the

Note, Loan Agreement, Benbrook Guaranty, Kamara Guaranty, the Sworn Declaration, and a copy

of the payoff quote dated February 2, 2021 (Payoff Quote). The Sworn Declaration states that as of

February 2, 2021, the amount due under the terms of the Note and Loan Agreement includes the

unpaid principal balance of $598,751.34, unpaid accrued interest of $20,909.13, and late charges

of $4,157.56, and that "[i]nterest continues to accrue at the rate of $91.48 per day after February 2,

2021." (doc. 8-4 at 5.)  It also states that these calculations are supported by the Payoff Quote. (*Id.*

---

[6]Plaintiff's motion specifically requested $638,191.19 in liquidated monetary damages, which included attorneys' fees and costs, but its request for attorneys' fees and costs will be addressed separately.

at 5, 60.) The evidence Plaintiff has presented supports the loss amount asserted.

Because Plaintiff's losses are itemized and capable of mathematical calculation, the amount of judgment can be reliably computed from the record and without a hearing. *See* Fed. R. Civ. P. 55(b)(2) ("*If*, in order to enable the court to enter judgment . . . it is necessary to take an account or to determine the amount of damages . . . the court *may* conduct such hearings or order such references as it deems necessary and proper . . .") (emphasis added); *see also James*, 6 F.3d at 310 (stating that the court relied on affidavits, documentary evidence, and the judge's personal knowledge of the record). Based on the record, Plaintiff has shown that an award of monetary damages of $623,818.03, plus interest accrual in the amount of $91.48 per day between February 2, 2021 and the date judgement is entered in this case, is permitted under the terms of the Note, Loan Agreement, Benbrook Guaranty, and Kamara Guaranty. Accordingly, it should be awarded its monetary damages, and Defendants, jointly and severally, should be ordered to pay the total amount of $623,818.03, plus interest accrual in the amount of $91.48 per day between February 2, 2021 and the date judgement is entered in this case, in monetary damages to Plaintiff.

### 2.    *Attorneys' Fees and Costs*

Plaintiff also seeks its "reasonable attorneys' fees and costs related to the breach of contract claims (as provided for in the terms of the Loan Documents and Section 38.001(8) of the Texas Civil Practice and Remedies Code) in the amount of $14,373.16." (doc. 8 at 2.)

"The award of attorneys' fees is governed by the law of the state whose substantive law is applied to the underlying claims." *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005). Under Texas law, a party may recover attorney's fees only when allowed by statute or contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8); *see also 1/2 Price Checks Cashed v.*

*United Auto. Ins. Co.*, 344 S.W.3d 378, 382 (Tex. 2011) (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009)).[7]

Here, the Loan Agreement provides that Clean Smiles agrees to pay "all of Lender's costs and expenses, including Lender's attorney's fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement," as well as "all court costs." (doc. 8-4 at 11.) The Benbrook Guaranty and Kamara Guaranty both provide that Benbrook and Kamara separately "agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty," as well as "all court costs." (*Id.* at 54, 58.)

In order to warrant an award of fees, a plaintiff need only prove that it was awarded damages and the reasonableness of the fee request. *See Mathis*, 302 F.3d at 462. "Although courts should consider several factors when awarding attorney's fees, a short hand version of these considerations is that the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). In *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), the Texas Supreme Court identified the following factors to determine the reasonableness of attorney's fees:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

---

[7]This is also the general rule under Illinois law. *See In re Weinschneider*, 395 F.3d 401, 404 (7th Cir. 2005) ("Illinois follows the American rule, under which attorney fees are not available unless the parties have agreed to them or a statute provides for them.").

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 818 (citing Tex. Disciplinary R. Prof'l Conduct 1.04(b)).  The applicant is not required to present evidence on all of the factors, however. *Weaver v. Jamar*, 383 S.W.3d 805, 814 (Tex. App.–Houston [14th Dist.] 2012, no pet.).  "The trial court may also consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Id.*

In Texas, uncontroverted attorney testimony or an affidavit testifying to the attorney's qualifications, reasonableness of the attorney's fees, and the basis for the opinion, may be sufficient to support an award of attorney's fees. *See Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.–Fort Worth 1997, no writ) ("Where . . . trial counsel's testimony concerning attorneys' fees is clear, positive and direct, and uncontroverted, it is taken as true as a matter of law. This is especially true where the opposing party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so.").  "The court, as a trier of fact, may award attorneys' fees *as a matter of law* in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so."  *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (emphasis added).

Here, Plaintiff submits a declaration from its counsel, as well as corresponding billing

records. (*See* doc. 8-5.)  Counsel's declaration and the billing records set out the hourly rates for the individuals who worked on the case, and the declaration states that the rates are reasonable based on their skills and experience, and opine that the fees incurred are reasonable and necessary. (*See id.* at 3-4.)  It states that the sum of $13,041.50 in attorneys' fees is "reasonable and necessary" for the legal services to prepare for and prosecute Plaintiff's claims. (*Id.*)  It also states that Plaintiff "incurred $1,331.66 in compensable litigation costs." (*Id.* at 4.) The attached billing records itemize the time spent on this case with details regarding the specific work performed, the charges for that time, and the law firm's out-of-pocket expenses.  (*Id.* at 5-19.)  Under Texas law, Plaintiff's evidence is "legally sufficient" for an award of attorney's fees. *See In re Estate of Tyner*, 292 S.W.3d 179, 184 (Tex. App–Tyler 2009, no pet.) ("[A]ttorney swore under oath that he is a licensed attorney, he is familiar with the reasonable and necessary attorney's fees charged for appeals in civil actions such as this case, he has personal knowledge of the services rendered to [the party] in this matter, and those services were reasonable, necessary, and customary. Thus, [the party's] attorney's affidavit sufficiently established reasonable attorney's fees and is legally sufficient to support the trial court's award of attorney's fees.").  The amount of attorneys' fees and costs Plaintiff seeks is reasonable as a matter of law. *See Ragsdale*, 801 S.W.2d at 882.  Accordingly, it should be awarded the full amount requested.[8]

---

[8]Plaintiff also seeks attorneys' fees under § 38.001(8) of the Texas Civil Practices & Remedies Code, which allows the recovery of reasonable attorneys' fees from an individual or corporation "if the claim is for ... an oral or written contract." Under Texas law, "[p]arties are free to contract for a fee-recovery standard either looser or stricter than Chapter 38." *Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). When, as here, the contract at issue provides for the recovery of attorneys' fees, "the terms of the contract, not statute, control the outcome of this issue." *Mohican Oil & Gas, LLC v. Scorpion Expl. & Prod., Inc.*, 337 S.W.3d 310, 321 (Tex. App.—Corpus Christi 2011, pet. denied) (citations omitted); *accord Intercontinental Group P'ship*, 295 S.W.3d at 653 (determining attorney's fees according to mandatory fee-award contract and looking to § 38.001 only as instructive but not controlling); *see Garcia v. Wells Fargo Bank, N.A.*, No. 3:12-CV-645-P, 2012 WL 12873202, at *6 (N.D. Tex. Oct. 26, 2012) (*citing id.*) ("Contractual agreements providing for the recovery of attorney's fees supersede the statutory provisions for the recovery of fees found in Texas Civil Practice & Remedies Code chapter 38."). Because the Loan

### 3. *Post-Judgment Interest*

Plaintiff also seeks post-judgment interest. (doc. 12 at 5.) "Post-judgment interest is awarded as a matter of course" under 28 U.S.C. § 1961(a). *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) (citing 28 U.S.C. § 1961(a)). Given that "district courts do not have the discretion to deny post-judgment interest on monetary judgments," *Paisano Capital SA de CV v. 23 Tex. Produce, Inc.*, No. 3:19-CV-0852-B, 2019 WL 3239152, at *5 (N.D. Tex. July 18, 2019) (citing *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017)), Plaintiff's request for post-judgment interest should be granted and awarded at the applicable federal rate[9] from the date of final judgment until it is paid in full.

### 4. *Judicial Foreclosure*

Plaintiff seeks judicial foreclosure of the secured property described in the security agreements. (doc. 1 at 10-11.)

Under Texas law, a "secured party is entitled to foreclose on its security interest in the event of default." *Yokogawa Corp. of Am. v. Skye Int'l Holdings, Inc.*, 159 S.W.3d 266, 269 (Tex.App.–Dallas 2005, no pet.) (citing Tex. Bus. & Com. Code § 9.601(a)(1)).[10] "A security interest attaches in collateral when three conditions have been satisfied: (1) value has been given; (2) the debtor has rights in the collateral; and (3) the debtor has authenticated a security agreement

---

Agreement and the guaranty agreements "provide recovery for attorney's fees and costs, the court need not address whether [Plaintiff] is entitled to such fees and costs pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code." *Branch Banking & Tr. Co. v. Mansfield Barbecue, LLC*, No. 3:19-CV-158-L, 2019 WL 5684430, at *3 (N.D. Tex. Oct. 31, 2019).

[9]The post-judgment interest rate is based upon the applicable federal rate. *See* 28 U.S.C. § 1961.

[10]Illinois law also provides for judicial foreclosure under a similar statutory scheme. *See Sw. Traders, Inc. v. Spring Creek Holdings LLC*, No. 17-CV-02870, 2018 WL 11199012, at *4 (N.D. Ill. Sept. 24, 2018) (citing 810 ILCS 5/9-609) ("Under Illinois law, after default, a secured party may seek judicial assistance in retaking possession of the collateral.").

that provides a description of the collateral." *In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 422 (Bankr. N.D. Tex. 2021) (citing Tex. Bus. & Com. Code § 9.203(b)(1)-(3)(A)). "[I]n order to create a security interest, the security agreement must describe the collateral with sufficient particularity to identify it." *Sanders v. Comerica Bank, Inc.*, 274 S.W.3d 861, 863 (Tex. App.—Fort Worth 2008, no pet.) (citing Tex. Bus. & Com. Code § 9.108(a)). A description is sufficient if it reasonably "identifies the collateral by: (1) specific listing; (2) category; (3) ... a type of collateral defined in this title; (4) quantity; (5) computational or allocation formula or procedure; or (6) ... any other method, if the identity of the collateral is objectively determinable." Tex. Bus. & Com. Code § 9.108(b). "By statute, a collateral description of 'all the debtor's assets' or 'all the debtor's personal property' does not reasonably identify the collateral." *Sanders*, 274 S.W.3d at 863 (citing Tex. Bus. & Com. Code § 9.108(c)).

In support of its request for judicial foreclosure of its security interests, Plaintiff provides the Clean Smiles Security Agreement, Benbrook Security Agreement, and Kamara Security Agreement, in which Defendants granted Plaintiff a security interest in the property described under each agreement. (doc. 8-4 at 17-35.) It also provides the UCC financing statements filed on December 22, 2014, perfecting its interest in the property described in the Clean Smiles Security Agreement and Benbrook Security Agreement. (*Id.* at 36-39.) The Clean Smiles Security Agreement and Benbrook Security Agreement use the same language to describe the property of Clean Smiles and Benbrook:

> All Inventory, Chattel Paper, Accounts, Equipment, General Intangibles and Fixtures, whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general Intangibles and other accounts proceeds).

17

(*Id.* at 17, 23.) The Kamara Security Agreement describes the secured property as:

> Life Insurance Policy number LB09002512 on the life of Harold Kamara issued by North American Company in an amount of no less than $1,126,000.00;

> Disability Insurance Policy number Z9624600 in the name of Harold Kamara Issued by Berkshire Life Insurance Company of America with a minimum monthly benefit amount of no less then $4,000.00; and

> Disability Insurance Policy number Z2129550 in the name of Harold Kamara Issued by Berkshire Life Insurance Company of America with a minimum monthly benefit amount of no less than $3,500.00; and

> Disability Insurance Policy number _____ in the name of Harold Kamara issued by Berkshire Life Insurance Company of America with a minimum monthly benefit amount of no less than $2,267.00.

(*Id.* at 30.)

Because Plaintiff's motion demonstrates that it has valid security agreements from Defendants that reasonably identifies the covered property, that default has occurred, and that judicial foreclosure of the secured property is warranted, Plaintiff is entitled to judicial foreclosure. Accordingly, its request for judicial foreclosure of the property secured under the Clean Smiles Security Agreement, Benbrook Security Agreement, and Kamara Security Agreement should be granted.

## III.  RECOMMENDATION

Plaintiff's motion for default judgment should be **GRANTED**, and it should recover from and against Defendants, jointly and severally, (a) monetary damages of $623,818.03; (b) pre-judgment interest accrual in the amount of $91.48 per day from February 2, 2021 until the date that final judgment is entered; (c) attorneys' fees and costs in the amount of $14,373.16; and (d) post-judgment interest at the applicable federal rate from the date of final judgment until paid in full. Its request for judicial foreclosure of the secured property should also be granted.

**SO RECOMMENDED** on this 30th day of August, 2021.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F. 3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

19